IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| **MICRO FOCUS (US), INC.,** *et al.*, | * | |
| Plaintiffs, | * | |
| v. | | Case No.: PWG-14-2417 |
| | * | |
| **AMERICAN EXPRESS CO.,** *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiffs Micro Focus (US), Inc. and Micro Focus IP Development Ltd. filed suit in this Court against Defendant American Express Company ("American Express"), "a New York corporation with its principal place of business in New York," alleging that American Express "exceeded its rights by using the Micro Focus [copyrighted] software beyond what was permitted by American Express's license to use the Micro Focus software, . . . in violation of 17 U.S.C. § 501." Compl. ¶¶ 3, 9, ECF No. 1. American Express moved to dismiss for lack of personal jurisdiction, ECF No. 9, in response to which Plaintiffs filed an opposition, ECF No. 17, an Amended Complaint, ECF No. 10, and a Motion for Leave to File a Second Amended Complaint, to which it attached a proposed second amended complaint ("Second Amended Complaint"),[1] ECF Nos. 16, 16-1. American Express opposed the proposed amendment, ECF

---

[1] The Amended Complaint added Defendants SAP, SE, of Germany, and SAP America, Inc., "a Delaware corporation registered to do business in Maryland." Am. Compl. ¶ 4. Summons were issued as to these Defendants on October 29, 2014, ECF No. 13, but it does not appear that Plaintiffs have served these Defendants. Plaintiffs will be ordered to show cause why the complaint should not be dismissed as to Defendants SAP, SE, and SAP America, Inc., without prejudice pursuant to Fed. R. Civ. P. 4(m) and Local Rule 103.8.a.

No. 28, and filed a second motion to dismiss, ECF No. 19, insisting that neither the Amended Complaint nor the Second Amended Complaint establishes a basis for this Court to exercise personal jurisdiction over it.[2]  Because it is in the interest of justice, I will allow Plaintiffs to amend.  And, because Plaintiffs have alleged facts that may, but do not necessarily, establish this Court's personal jurisdiction over American Express, and they seek jurisdictional discovery, I will deny American Express's Second Motion to Dismiss without prejudice to renewal, following limited discovery on the issue of jurisdiction, should American Express still believe that this Court lacks jurisdiction over it.

I.      MOTION TO AMEND

Plaintiffs seek to amend their Amended Complaint "to add reference to the relevant portions of Maryland's Long Arm Statute" and "American Express's contacts with Maryland," and "to add substantive allegations regarding American Express's activities that subject it to general personal jurisdiction in Maryland," by "alleg[ing] that American Express purposefully avails itself of Maryland by doing business in the State directly and through its subsidiaries," based on the 2013 American Express Company Annual Report. Pls.' Mot. ¶¶ 7–9.  Whether to grant a motion for leave to amend is within this Court's discretion, *Foman v. Davis*, 371 U.S. 178, 182 (1962), and "[t]he court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2). The Court only should deny leave to amend if amendment "would prejudice the opposing party, reward bad faith on the part of the moving party, or . . . amount to futility," *MTB Servs., Inc. v. Tuckman–Barbee Constr. Co.*, No. RDB–12–2109, 2013 WL 1819944, at *3 (D. Md. Apr. 30, 2013); *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006).

---

[2] The parties have completed briefing the two pending motions to dismiss, as well as the motion to amend.  ECF Nos. 9-1, 16, 17, 19-1, 20, 28, 30, 29, 31.  A hearing is not necessary.  *See* Loc. R. 105.6.  The first motion to dismiss will be denied as moot in light of the subsequent motion.

2

Otherwise, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief," and the plaintiff moves to amend, the Court should grant the motion so that the plaintiff has the "opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182. Here, American Express does not argue that it would be prejudiced by the proposed amendment, or that Plaintiffs act in bad faith. Rather, it opposes the amendment solely on the basis of futility. *See* Def.'s Opp'n 5–18. Specifically, American Express insists that "amendment would be futile" because "Plaintiffs face an insurmountable problem," as "the gravamen of this dispute simply did not occur in Maryland," and "American Express is not 'essentially at home' in this jurisdiction," such that "Plaintiffs cannot allege facts supporting general jurisdiction over it." Def.'s Opp'n 1. As Plaintiffs do not dispute that the events giving rise to this litigation did not occur in Maryland, *see* Pls.' Opp'n 12, the issue is whether Plaintiffs can establish that American Express is subject to this Court's general jurisdiction. I will address this issue in my analysis of American Express's Second Motion to Dismiss.

## II.     MOTION TO DISMISS

When a defendant challenges this Court's personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the jurisdictional question "'is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence.'" *Fyfe Co., LLC v. Structural Grp., LLC*, No. CCB-13-176, 2013 WL 2370497, at *2 (D. Md. May 30, 2012) (quoting *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003)). If the Court considers the operative complaint and the parties' briefings but does not conduct an evidentiary hearing, then "'the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge.'" *In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997) (quoting *Combs v. Bakker*, 886 F.2d 673, 676

(4th Cir. 1989)); *see Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009)). This is the approach I will take. I "'must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.'" *Fyfe Co.*, 2013 WL 2370497, at *2 (quoting *Mylan Labs, Inc. v. Akzo, N.V.*, 2 F.3d 56, 62 (4th Cir. 1993) (citation and quotation marks omitted)); *see Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004). Yet, I "need not 'credit conclusory allegations or draw farfetched inferences.'" *Tharp v. Colao*, No. WDQ-11-3202, 2012 WL 1999484, at *1 (D. Md. June 1, 2012) (quoting *Masselli & Lane, PC v. Miller & Schuh, PA*, No. 99-2440, 2000 WL 691100, at *1 (4th Cir. May 30, 2000)).

Federal district courts may exercise personal jurisdiction over a defendant who has been served or waived service if that defendant "is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). Thus, this Court, located in Maryland, "may exercise personal jurisdiction as to any cause of action over a person domiciled in, served with process in, organized under the laws of, or who maintains his principal place of business" in Maryland. Md. Code Ann., Cts. & Jud. Proc. § 6-102(a). Additionally, this Court may exercise personal jurisdiction over a corporate defendant that is neither served in Maryland nor organized under its laws and that does not maintain its principal place of business in Maryland, if its actions meet the criteria delineated in Cts. & Jud. Proc. § 6-103, Maryland's long-arm statute. Cts. & Jud. Proc. § 6-103(a); *see Tawney v. AC & R Insulation Co.*, No. WDQ-13-1194, 2013 WL 5887625, at *2 (D. Md. Oct. 30, 2013); *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 888 F. Supp. 2d 691, 699 (D. Md. 2012). Maryland's statute provides:

> (a) If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.

> . . .
>
> (b) A court may exercise personal jurisdiction over a person, who directly or by an agent:
>
>> (1) Transacts any business or performs any character of work or service in the State;
>>
>> (2) Contracts to supply goods, food, services, or manufactured products in the State;
>>
>> (3) Causes tortious injury in the State by an act or omission in the State;
>>
>> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;
>>
>> (5) Has an interest in, uses, or possesses real property in the State; or
>>
>> (6) Contracts to insure . . . any person, property, risk, contract . . . located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

Cts. & Jud. Proc. § 6-103(a)–(b).

In their Second Amended Complaint, Plaintiffs assert that subsections (b)(1), (2), (4), and (5) authorize the Court's jurisdiction. Second Am. Compl. ¶ 6; *see Tawney*, 2013 WL 5887625, at *2. Yet, in their Opposition, Plaintiffs argue only that American Express's "continuous and substantial operations that enable it to perform the financial transactions which are the core of American Express's business" purportedly give rise to "this Court's general jurisdiction." Pls.' Opp'n 1, 12, 16. They do not contend that Plaintiffs' claims for copyright violations "aris[e] from" any act of American Express *in Maryland*, as is necessary for jurisdiction pursuant to § 6-103(b)(1), (2), or (5). *See* Cts. & Jud. Proc. § 6-103(a), (b)(1), (2), (5). Significantly, for subsection (b)(4), unlike the other subsections, the act from which the cause of action arises may occur "*outside* the State," provided that the defendant "engages in [a] persistent course of conduct *in the State* or derives substantial revenue from . . . services . . . used . . . *in the State*." Cts. & Jud. Proc. § 6-103(b)(4) (emphasis added). Therefore, I will consider whether Plaintiffs

have established this Court's personal jurisdiction over American Express pursuant to § 6-103(b)(4).

Whether the Court has long-arm jurisdiction is only one half of a two-part analysis, however, as the Court also must determine whether "the exercise of jurisdiction comports with the due process requirements of the Fourteenth Amendment." *Tawney*, 2013 WL 5887625, at *2 (citing *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003)). "A court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has 'minimum contacts' with the forum, such that to require the defendant to defend its interests in that state 'does not offend traditional notions of fair play and substantial justice.'" *Carefirst*, 334 F.3d at 397 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted)). If "the defendant's contacts with the forum state also provide the basis for the suit . . . , they may establish 'specific jurisdiction.'" *Id.* But where, as here,[3] "the defendant's contacts with the state are not also the basis for the suit, then jurisdiction over the defendant must arise from the defendant's general, more persistent, but unrelated contacts with the state," and "[t]o establish general jurisdiction, the defendant's activities in the state must have been 'continuous and systematic.'" *Id.* (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)). Both forms of jurisdiction "require[] that the defendant purposefully avail itself of the privilege of conducting activities within the forum state." *Tawney*, 2013 WL 5887625, at *2 (footnote omitted).

Although the Court must consider due process requirements as well as long-arm jurisdiction requirements to determine whether it may exercise personal jurisdiction over a

---

[3] American Express argues—and Plaintiffs do not dispute—that "the gravamen of this dispute did not take place in this jurisdiction," such that this Court lacks specific personal jurisdiction. Def.'s Mem. 2; *see* Pls.' Opp'n 12.

defendant, the Maryland long-arm statute is "coextensive with the scope of jurisdiction allowable by due process." *Id.*; *see Metro. Reg'l Info. Sys.*, 888 F. Supp. 2d at 698); *Mackey v. Compass Mktg., Inc.*, 892 A.2d 479, 486 (Md. 2006). Indeed, jurisdiction under § 6-103(b)(4) "has been found by some judges to have the attributes of general jurisdiction." *See, e.g.*, *Gimer v. Jervey*, 948 F.2d 1280, 1991 WL 237931, at *3 (4th Cir. 1991) ("The 'long-arm' jurisdiction of § 6-103(b)(4) which Gimer is asserting in this case involves general jurisdiction because the cause of action does not arise out of Jervey's contacts with Maryland."); *Mycosafe Diagnostics GMBH v. Life Techs. Corp.*, No. DKC-12-2842, 2013 WL 145893, at *4–5 (D. Md. Jan. 11, 2013) (noting that "'[s]ubsection (b)(4) has been construed by the Maryland courts as a general jurisdiction statute"); *Rist v. Xcentric Ventures, LLC*, No. MJG-12-3660, 2013 WL 2946762, at *3 n.6 (D. Md. June 12, 2013) ("§ 6-103(b)(4) . . . satisfies general jurisdiction."). Moreover, even those judges who conclude that "[e]stablishing a 'persistent course of conduct' under section 6-103(b)(4) is 'not tantamount to establishing general jurisdiction,'" nonetheless agree that § 6-103(b)(4) "'require[s] greater contacts that those necessary to establish jurisdiction under [other subsections of Maryland's long-arm statute].'" *Metro. Reg'l Info. Sys.*, 888 F. Supp. 2d at 698 (quoting *American Ass'n of Blood Banks v. Bos. Paternity, LLC*, No. 2008–2046, 2009 WL 2366175, at *8 (D. Md. July 28, 2009)); *see Strong Pharma. Labs., LLC v. Trademark Cosmetics, Inc.*, No. RDB-05-3427, 2006 WL 2033138, at *6 (D. Md. July 17, 2006) ("Although claims under § 6–103(b)(4) require greater contacts than those necessary for claims under §§ 6-103(b)(1)–(2), the level is distinct from that required for general jurisdiction.").

Notably, this Court has discretion to "permit limited discovery as to the jurisdictional issue," and to "'resolve the [jurisdictional] challenge on the basis of a separate evidentiary hearing, or . . . defer ruling pending receipt at trial of evidence relevant to the jurisdictional

question.'" *Cutcher v. Midland Funding, LLC*, No. ELH-13-3733, 2014 WL 2109916, at *2 (D. Md. May 19, 2014) (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). Yet, the Court may deny such discovery "[w]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state." *Carefirst*, 334 F.3d at 402–03 (noting that, in *McLaughlin v. McPhail*, 707 F.2d 800, 806 (4th Cir. 1983), the Fourth Circuit held that the "district court did not abuse its discretion in denying jurisdictional discovery when, '[a]gainst the defendants' affidavits,' plaintiff 'offered nothing beyond his bare allegations that the defendants had had significant contacts with the [forum] state of Maryland'" (internal quotation marks omitted)). In *Carefirst*, also, the Fourth Circuit affirmed the district court's conclusion that the plaintiff "had failed to establish that jurisdictional discovery was warranted," given that the plaintiff did not make "any concrete proffer" or basis for discrediting the defendant's jurisdictional affidavits. *Id.* at 403.

## III. DISCUSSION

American Express insists that "the Supreme Court's decision in [*Daimler AG v. Bauman*, 134 S. Ct. 746 (2014),] as interpreted by this Court [in *Cutcher*, 2014 WL 2109916], precludes the exercise of general personal jurisdiction," Def.'s Mem. 2, such that any exercise of jurisdiction over Defendant would not comport with due process considerations, *id.* at 7.[4] Yet, in Plaintiffs' view, the *Daimler* Court "reject[ed] the position that a corporation may be subject to general jurisdiction only where it is incorporated or has its principal place of business," and the Supreme Court's holding does not support "American Express's implicit contention that the Court need not grapple with the nature of American Express's continuous and substantial contacts with Maryland." Pls.' Opp'n 8. Plaintiffs distinguish the facts of the case before this

---

[4] As noted, it is undisputed that only the exercise of general, not specific, personal jurisdiction is at issue. *See* Def.'s Mem. 2; Pls.' Opp'n 12.

8

Court from the facts before the Supreme Court in *Daimler*, *id.* at 10–12, insisting that "the nature and scope of American Express's contacts with Maryland make general personal jurisdiction in this Court appropriate under Maryland's long-arm statute and satisfy the due process requirements of the Fourteenth Amendment," *id.* at 17.  Alternatively, they seek leave to engage in limited discovery related to jurisdiction.  *Id.* at 17.

As American Express asserts, not all ongoing contact with a state subjects a corporation to suit in that state.  *See Daimler*, 134 S. Ct. at 757 ("[A] corporation's 'continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'" (quoting *Int'l Shoe*, 326 U.S. at 318)).  Rather, "only a limited set of affiliations with a forum will render a defendant amenable to" general jurisdiction in that state.  *Daimler*, 134 S. Ct. at 760 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011))*.*  For a corporation, "'the paradigm forum for the exercise of general jurisdiction'" is the state "'equivalent'" to an "individual's domicile,'" that is, the state "'in which the corporation is fairly regarded as at home.'"  *Daimler*, 134 S. Ct. at 760 (quoting *Goodyear*, 131 S. Ct. at 2853–54).  And, "the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" *Id*. (citation omitted).  Nonetheless, general jurisdiction may exist in other fora.  *See id.* at 760–61 (noting that "*Goodyear* did not hold that a corporation may be subject to general jurisdiction *only* in a forum where it is incorporated or has its principal place of business" (emphasis in *Daimler*)).

This broader concept of jurisdiction does not extend general jurisdiction to "every State in which a corporation 'engages in a substantial, continuous, and systematic course of business,'" an approach that the *Daimler* Court held to be "unacceptably grasping."  *Id.* at 760–61.  The Supreme Court reiterated its holding from *Goodyear*: "[T]he inquiry is not whether a foreign

corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum State.'" *Id.* at 761 (quoting *Goodyear*, 131 S. Ct. at 2851). By way of example, the Supreme Court cited *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952), in which it had "held that the Ohio courts could exercise general jurisdiction over [a Philippines company] without offending due process," given that the company had ceased its operations in the Philippines and "its president [had] moved to Ohio, where he kept an office, maintained the company's files, and oversaw the company's activities," such that "'Ohio was the corporation's principal, if temporary, place of business.'" *Id.* at 755–56 (quoting *Keeton v. Hustler Magazine, Inc.*, 456 U.S. 770, 780 n.11 (1984) (discussing *Perkins*)). It explained that "general jurisdiction requires affiliations . . . comparable to a domestic enterprise in that State." *Id*. at 758 n.11.

On that basis, the *Daimler* Court concluded that Daimler, a Germany company with its headquarters in Germany, was not subject to suit in California for tortious activity that allegedly occurred in Argentina, despite the fact that one of its subsidiaries, which was incorporated in Delaware and had its principal place of business in New Jersey, had a presence in California, insofar as the subsidiary maintained facilities in California and generated 2.4% of Daimler's sales there.[5] *Id.* at 751, 752, 761. The Supreme Court reasoned that "if Daimler's California activities sufficed to allow adjudication of this Argentina-rooted case in California, the same global reach would presumably be available in every other State in which [its subsidiary's] sales are sizable," which would be an "exorbitant exercise of all-purpose jurisdiction [that] would

---

[5] Although only Daimler was a party to the suit, "[j]urisdiction over the lawsuit was predicated on the California contacts of . . . a subsidiary of Daimler" that "distributes Daimler-manufactured vehicles to independent dealerships throughout the United States, including California." 134 S. Ct. at 751.

scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Id*. at 761–62 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

This Court considered the *Daimler* holding in *Cutcher v. Midland Funding, LLC*, No. ELH-13-3733, 2014 WL 2109916 (D. Md. May 19, 2014). It observed that, "[u]nder the standard for general jurisdiction articulated by the *Daimler* Court, 134 S. Ct. at 762 n.20, '[a] corporation that operates in many places can scarcely be deemed at home in all of them.'" *Id.* at *5. The Court concluded that the plaintiff's allegations that the defendants "'conduct[ed] business' in Maryland and maintain[ed] an address in Baltimore" were insufficient to establish general jurisdiction, reasoning that the plaintiff "supplie[d] no further allegations regarding the scope of defendants' activities in Maryland, much less any allegation suggesting that defendants are 'essentially domiciled' in this state," and the plaintiff did "not request jurisdictional discovery regarding the nature of defendants' presence or activities in Maryland." *Id.* at *7. The Court also concluded that the plaintiff had not shown how the "maintenance of 'active collection agency licenses' in Maryland" by two defendants gave rise to general jurisdiction, when those defendants "'maintain[ed] debt collection licenses in each of the states requiring such licensure.'" *Id*. (quoting briefs). Finally, the Court concluded that the plaintiff had not cited any authority to establish general jurisdiction based on two of the defendants' participation in multiple lawsuits in the federal district and bankruptcy courts in Maryland. *Id.* at *8.

> Here, Plaintiffs claim
>
> American Express makes its services, particularly including its consumer credit services, available to thousands of Maryland residents and Maryland businesses, who use those services to perform thousands of commercial transactions in and from Maryland every day; it is a material part of American Express's business that its services are available and regularly employed in Maryland; American Express maintains offices all over the state of Maryland, including approximately

> 21 offices in the Baltimore area alone; American Express maintains a "money services business license" in Maryland that is regulated by the Maryland Department of Labor, Licensing, and Regulation; American Express subsidiaries have filed hundreds of lawsuits in Maryland courts since the beginning of this year alone; American Express offers a special line of credit to members of Costco Wholesale Corporation, a wholesale club that has at least eleven locations in Maryland that accept the American Express card and do not accept any other credit cards . . . ; and American Express has other substantial business connections to Maryland that are not commonly known, information concerning which is uniquely in the possession of American Express.

Am. Compl. ¶ 9.  They also claim that American Express does, and benefits from doing, "substantial business in this State, directly and through its subsidiaries that are subject to general personal jurisdiction in Maryland and that are controlled by American Express as evidenced by American Express's Annual Reports and Consolidated Financial Statements."  Second Am. Compl. ¶ 10.

These allegations, although more numerous than the jurisdictional allegations in *Cutcher*, still fail to define the scope of American Express's activities in Maryland, particularly in comparison to its activities in other jurisdictions.  *See Estate of Thompson v. Mission Essential Personnel, LLC*, No. 11CV547, 2014 WL 4745947, at *3 (M.D.N.C. Sept. 23, 2014) ("[T]he inquiry does not rest on Defendant's activity relative to the activity of other businesses in the state, but rather the inquiry focuses on Defendant's in-state activity compared with the whole of Defendant's own business activities.").  Consequently, I am unable to determine that American Express is "essentially at home" in Maryland.  *See Goodyear*, 131 S. Ct. at 2851; *Daimler*, 134 S. Ct. at 761; 2014 WL 2109916, at *7.  Nor can I determine whether, for purposes of long-arm jurisdiction, American Express "engages in [a] persistent course of conduct in the State or derives substantial revenue from . . . services . . . used . . . in the State."  Cts. & Jud. Proc. § 6-103(b)(4).  But, I also cannot conclude definitively that American Express is not subject to this Court's personal jurisdiction, given the number of continuous contacts that Plaintiffs allege it has

12

with this forum and American Express's failure to contest, by argument or affidavit, the litany of contacts Plaintiffs alleged.

Further, unlike the plaintiff in *Cutcher*, Plaintiffs state that their jurisdictional allegations are "based on information that Micro Focus expects will be confirmed with evidentiary support after a reasonable opportunity for further investigation and discovery," Am. Compl. ¶ 9, and they seek leave to take jurisdictional discovery, Pls.' Opp'n 4, 17.  Although brief, the jurisdictional allegations are not merely conclusory, as they identify facets of American Express's business practices in Maryland.  Thus, they are more than "'bare allegations that the defendants had had significant contacts with the [forum] state of Maryland.'"  *Carefirst*, 334 F.3d at 402–03 (quoting *McLaughlin*, 707 F.2d at 806).  And, unlike in *Carefirst* and *McLaughlin*, American Express has not offered any affidavits or other evidence to negate Plaintiffs' allegations.  *See id.* at 403; *McLaughlin*, 707 F.2d at 806.  Therefore, I will exercise my discretion to permit focused discovery, limited to the scope of American Express's activities that may give rise to personal jurisdiction in Maryland.  *See Combs*, 886 F.2d at 676; *Cutcher v*, 2014 WL 2109916, at *2.  Thus, Plaintiffs' proposed amendments are not futile, as the Second Amended Complaint is not subject to dismissal, and Plaintiffs' Motion for Leave to File a Second Amended Complaint is granted.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

## IV.  CONCLUSION

In sum, Plaintiffs' Motion for Leave to File a Second Amended Complaint, ECF No. 16, IS GRANTED, and the Second Amended Complaint, ECF No. 16-1, IS ACCEPTED as the operative complaint.  Defendant American Express's Motion to Dismiss, ECF No. 9, IS DENIED AS MOOT, and its Second Motion to Dismiss, ECF No. 19, IS DENIED WITHOUT PREJUDICE to renewal, following limited discovery on the issue of jurisdiction, should

American Express still believe that this Court lacks jurisdiction over it. Additionally, Plaintiffs will be ordered to show cause why the complaint should not be dismissed as to Defendants SAP, SE, and SAP America, Inc., without prejudice pursuant to Fed. R. Civ. P. 4(m) and Local Rule 103.8.a.

      A separate order shall issue.

Dated: May 27, 2015                                                  /S/
                                                                                     Paul W. Grimm
                                                                                     United States District Judge

lyb