UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICRO FOCUS (US), INC. and MICRO FOCUS IP DEVELOPMENT LIMITED, *Plaintiffs/Counterclaim-Defendants*, v. AMERICAN EXPRESS COMPANY, *Defendant/Counterclaim-Plaintiff.* | No. 1:15-CV-07438-PGG |

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

James D. Weinberger (jweinberger@fzlz.com)
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
866 United Nations Plaza
New York, New York 10017
Tel:  (212) 813-5900
Fax:  (212) 813-5901

Stuart M.G. Seraina (sseraina@kg-law.com)
  (admitted *pro hac vice*)
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202
Tel:  (410) 752-6030
Fax:  (410) 539-1269

*Attorneys for Plaintiffs/Counterclaim-Defendants*

{F2117289.3 }

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 2

    A.    Plaintiffs and the APA ............................................................................................. 2

    B.    American Express and the MLA .............................................................................. 4

ARGUMENT ......................................................................................................................... 5

I.    LEGAL BACKGROUND ........................................................................................... 5

    A.    Standard on Summary Judgment ............................................................................. 5

    B.    Summary Judgment and Contract Interpretation .................................................... 6

II.    THE APA LIMITS IDENTEX AND FIRSTLOC TO ANNUAL, PER SERVER SUBLICENSES ................................................................... 7

    A.    Principles of Contract Interpretation under English Law ...................................... 7

    B.    The APA Permits Only Annual Term, Per Server Licenses .................................. 9

    C.    The Grant of Rights in the RTS to American Express in the MLA Is Invalid, Rendering it Liable for Copyright Infringement ..................................... 10

CONCLUSION .................................................................................................................... 12

## **TABLE OF AUTHORITIES**

### **U.S. CASES**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)......................................................................................................5

*Ariel (UK) Ltd. v. Reuters Group PLC*,
    05-CV-9646 (JFK), 2006 WL 3161467 (S.D.N.Y. Oct. 31, 2006),
    *aff'd*, 277 F. App'x 43 (2d Cir. 2008).......................................................... 10-11, 12

*Bartsch v. Metro-Goldwyn-Mayer, Inc.*,
    391 F.2d 150 (2d Cir 1968)........................................................................................11

*Caldarola v. Calabrese*,
    298 F.3d 156 (2d Cir. 2002).........................................................................................6

*G. Ricordi & Co. v. Paramount Pictures Inc.*,
    189 F.2d 469 (2d Cir. 1951)........................................................................................11

*Gardner v. Nike, Inc.*,
    279 F.3d 774 (9th Cir. 2002) .....................................................................................11

*Gilliam v. American Broadcasting Companies*,
    538 F.2d 14 (2d Cir. 1976)....................................................................................11, 12

*Hampton v. Paramount Pictures Corp.*,
    279 F.2d 100 (9th Cir. 1960) ................................................................................11, 12

*Harrell v. Van der Plas*,
    08-CV-8252 (GEL), 2009 WL 3756327 (S.D.N.Y. Nov. 9, 2009) .........................10

*Hicks v. Baines*,
    593 F.3d 159 (2d Cir. 2010).........................................................................................6

*Jorgensen v. Epic/Sony Records*,
    351 F.3d 46 (2d Cir. 2003)...........................................................................................5

*Law Debenture Trust Co. of New York, v. Maverick Tube Corp.*,
    595 F.3d 458 (2d Cir. 2010)..................................................................................... 6-7

*Leutwyler v. Royal Hashemite Court of Jordan*,
    184 F. Supp. 2d 303 (S.D.N.Y. 2001)........................................................................12

*Major League Baseball Promotion Corp. v. Colour-Tex, Inc.*,
    729 F. Supp. 1035 (D.N.J. 1990) .........................................................................11, 12

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)......................................................................................................6

*In re McMahon*,
    235 B.R. 527 (S.D.N.Y. 1998)..................................................................................6, 8

*Mediterranean Shipping Co. USA Inc. v. AA Cargo Inc.*,
    46 F. Supp. 3d 294, 298 (S.D.N.Y. 2014)..................................................................................6

*Rice v. American Program Bureau*,
    446 F.2d 685 (2d Cir. 1971)......................................................................................................11

*Rogers v. Koons*,
    960 F.2d 301 (2d Cir. 1992)......................................................................................................10

*Salinger v. Colting*,
    607 F.3d 68 (2d Cir. 2010)........................................................................................................11

*Ward v. National Geographic Society*,
    208 F. Supp. 2d 429 (S.D.N.Y. 2002).................................................................................. 10-11

## ENGLISH CASES

*Arnold v. Britton*
    [2015] UKSC 36, [2015] AC 1619, [2015] 2 WLR 1593 ................................................... 7-9

*Rainy Sky v. Kookmin Bank*
    [2011] UKSC 50 ........................................................................................................................8

## STATUTE

17 U.S.C. § 501(a) ............................................................................................................................5

## RULE

Fed. R. Civ. P. 56................................................................................................................................1, 5

## TREATISES

Melville B. Nimmer & David Nimmer,
    *Nimmer on Copyright* (2006)...................................................................................................11

*Chitty on Contracts* (27th ed. 1994) ................................................................................................8

Plaintiffs and Counterclaim-Defendants Micro Focus (US), Inc. and Micro Focus IP Development Ltd. (together, "Micro Focus" or "Plaintiffs") hereby submit this memorandum of law in support of their motion for partial summary judgment pursuant to Fed. R. Civ. P. 56 against Defendant and Counterclaim-Plaintiff American Express Company ("American Express" or "Defendant") on the question of the validity of American Express's purported license to the copyrighted work at issue in this action.

## PRELIMINARY STATEMENT

This case involves Micro Focus's claim for copyright infringement against American Express as a result of the latter's use of Micro Focus's copyrighted runtime system software ("RTS"). American Express does not dispute that it has been using Plaintiffs' RTS for many years; rather, American Express claims this conduct does not constitute copyright infringement because it obtained a valid license for use of the RTS. American Express is wrong.

American Express uses the RTS as a key component of customer address tracking software called Names, Scans and IACE (the "IACE Application") distributed by a company called Identex Limited ("Identex"). To use the RTS in its application, Identex and Plaintiffs entered into a license agreement (the "Application Provider Agreement" or "APA") that gave Identex, along with its distributor Firstlogic Inc. ("Firstlogic"), the right to issue sublicenses for use of the RTS as a component of the IACE Application only for an annual term and based on a single-server license structure. Notwithstanding these clear limitations, Firstlogic entered into a Master License Agreement ("MLA") with American Express that purported to grant American Express a license to the RTS that is perpetual and unlimited as to the number of servers.

Under long-established Second Circuit precedent, any sublicense (here, the MLA) that goes beyond the scope of the rights provided to the sublicensor (Identex and Firstlogic as

delineated in the APA) cannot serve as a defense to a claim of copyright infringement. Thus, because the MLA purported to grant right to American Express that Identex did not receive under the APA, American Express is an infringer. Plaintiffs therefore respectfully request that the Court grant them partial summary judgment and hold that American Express's purported license to the RTS is invalid.

## STATEMENT OF FACTS

**A.    Plaintiffs and the APA**

Plaintiffs, a global software company and its United States affiliate, are the makers of the RTS, which in the most basic sense serves the crucial function of enabling newer software applications to run using older code. (Declaration of Susan Drennan ("Drennan Decl.") ¶ 2.) Identex's IACE Application, which incorporates the RTS, allows businesses such as American Express to track customer information and ensure communications are received by the correct individuals. (*Id*. ¶ 3.) Without the RTS, Identex's IACE Application cannot function. (*Id*.)

Prior to 2004, Micro Focus and Identex had a licensing relationship which permitted Identex to use the RTS and license it to third parties on a perpetual basis as part of the IACE Application. (*Id*. ¶ 4.) In 2004, Micro Focus and Identex entered into a new license agreement that changed the existing licensing arrangement from a system that permitted perpetual licenses for the RTS to one that allowed only annual term, per-server licenses. (*Id*. ¶ 5; Decl. of Hon. Ret. Prof. Sir Robin Jacob ("Jacob Decl."), ¶ 42.)[1]

---

[1] As noted below, the APA is governed by English law. Accordingly, Plaintiffs engaged an expert witness to assist the Court with interpretation. Plaintiffs' expert, Right Honourable Professor Sir Robin Jacob, is a Professor of Intellectual Property at University College London and a former Lord Justice of Appeal of the Court of Appeal of England and Wales. (Jacob Decl. ¶ 2.) From 2003 until he decided to leave the Court and take up his current position in 2011, Sir Robin was in charge of the Intellectual Property List and sat on nearly all IP cases in the Court of Appeal. (*Id*. Ex. B at ¶ 9.) He also heard various other disputes of a commercial nature,

Specifically, on March 2, 2004, Micro Focus and Identex entered into the APA.  (*See* Drennan Decl. Ex. A.)  The APA is governed by English law.  (*Id*. at Terms & Conditions ("T&C") ¶ 6.7.1.)  The APA provides Identex with the right, on a non-exclusive basis, to market and distribute the RTS as part of the IACE Application.  (*Id*. at T&C ¶ 2.1.)  This provision, however, makes no mention of any right of Identex to issue sublicenses.  *Id*.

Rather, Paragraph 3.1.5 of the Terms and Conditions provides that to the extent Identex issues sublicenses as part of its marketing and distribution of the APA, it must "limit[] the license granted to a per [server] license . . . and to an annual term. . . ."  (*Id*. at T&C ¶ 3.1.5.)  Likewise, Paragraph 3.2, which details prohibitions on Identex's conduct, confirms that it may not "[o]btain or provide a license term for the RTS other than an annual renewable license term." (*Id*. at T&C ¶ 3.2.8.)  The APA's cover letter, which summarizes the APA, further confirms that the only sublicenses permitted under the APA are to be annual: "The Agreement authorizes you [Identex] to distribute annual licenses for the . . . RTS . . . in conjunction with your own application program[] . . . Names, Scans and IACE."  (*Id*. at Cover Letter, ¶ 2.)

Firstlogic is bound by these same terms.  Exhibit 1, Paragraph 5 of the APA provides that Identex "may provide to Firstlogic . . . copies of the RTS for marketing and distribution directly to end users or indirectly through third party distributors . . . on behalf of [Identex] in object code form and in conjunction with [the IACE Application]; <u>provided</u>, <u>however</u>, that" Firstlogic is required to observe the APA and must execute a written agreement with Identex that: "(i) protects Micro Focus's proprietary rights in the Software Products to at least the same degree as

---

including commercial contract disputes.  (*Id*. Ex. B, ¶ 10.)  In addition, he has previously given expert testimony in a confidential New York arbitration concerning a contract governed by English law, among many other engagements.  (*Id*. Ex. C.)

the terms and conditions of this Agreement; . . . and (vi) does not permit distribution or sublicensing of the [RTS] beyond the scope of this Agreement." (*Id*. at Ex. 1, ¶ 5.)

As noted above, the entire business purpose of the APA was to transition the parties from a scheme of issuing perpetual sublicenses for the RTS to one of issuing annual, multi-server sublicenses. (Drennan Decl. ¶ 5; Jacob Decl. ¶ 42(a).) Exhibit 1 of the APA, which provides for "Upgrading Existing Application Provider Customers," (Drennan Decl. Ex. A at Ex. 1, ¶ 2) confirms this, providing that existing customers who have perpetual licenses for "previous versions" of the RTS are identified in Appendix C to the APA and have certain options should they wish to upgrade to the current version of the RTS under the new annual, per server license system. (*Id*.) American Express is not listed among them. (*Id*. at Appendix C.)

**B.    American Express and the MLA**

Firstlogic and American Express entered into the MLA on January 30, 2004. (Declaration of James Weinberger ("Weinberger Decl."), Ex. D.)[2] The MLA provided American Express with a license to use the IACE Application (*id*. ¶ 1.1, at Ex. A, Clause III), which use necessarily also entailed use of the embedded RTS. (*See generally* Drennan Decl. Ex. A.) The term of the MLA is "[p]erpetual" and the scope is "not limited to location or number of processors." (Weinberger Dec. Ex. D at Ex. A, Clauses IV, VI.)

---

[2] The APA was executed on March 2, 2004, while the MLA has an effective date of January 30, 2004. (Drennan Decl. Ex. A; Weinberger Decl. Ex. D.) Despite the fact that the Effective Date of the MLA precedes the execution date of the APA, the parties agree that the MLA was entered into pursuant to the APA. (Transcript of Court Conference, May 12, 2016 (Weinberger Decl. Ex. E).)

**ARGUMENT**

Partial summary judgment should be granted in favor of Plaintiffs on the issue of whether American Express holds a valid license to the RTS.[3] Under the unambiguous terms of the APA, Identex and its distributor Firstlogic were permitted only to grant annual licenses on a per-server basis. Nonetheless, in the MLA, Firstlogic purported to grant American Express a perpetual license unlimited by the number of servers on which the RTS was installed. Because Firstlogic did not have any legal right to grant American Express such a license, it is invalid and American Express's use of the RTS is without authorization from Micro Focus.

I.    LEGAL BACKGROUND

   A.    **Standard on Summary Judgment**

A party is entitled to summary judgment on a claim or subset thereof if "there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Only disputes about material facts – meaning "facts that might affect the outcome of the suit under the governing law" – will preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

---

[3] To prevail on a claim for copyright infringement under 17 U.S.C. § 501(a), a plaintiff must demonstrate (1) ownership of a valid copyright, and (2) unauthorized copying of the copyrighted works. *See Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003). While the validity of Plaintiffs' copyrights is not at issue at this stage of the case, by virtue of its defense that the MLA provides it with the right to use the RTS, American Express has conceded its use of the RTS. (Weinberger, Ex. F, ¶ 18 ("American Express denies . . . that is used Micro Focus' products in an infringing manner. To the contrary, American Express was at all times licensed to use the products at issue."). Because American Express's counterclaim seeks a declaratory judgment of non-infringement (*Id.* Counterclaim ¶¶ 11-13), partial summary judgment should be granted in favor of Plaintiffs on this element of Defendant's counterclaim as well.

"Once the moving party has asserted facts showing that the nonmoving party's claims cannot be sustained, the opposing party must set out specific facts showing a genuine issue of material fact for trial." *Mediterranean Shipping Co. USA Inc. v. AA Cargo Inc.*, 46 F. Supp. 3d 294, 298 (S.D.N.Y. 2014). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," because "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines,* 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted); *see also Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (stating that the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts").

  **B.**  **Summary Judgment and Contract Interpretation**

In disputes involving contract interpretation, summary judgment is appropriate where, as it is here, "the contract is unambiguous with respect to the question disputed by the parties." *See Law Debenture Trust Co. of N.Y., v. Maverick Tube Corp.*, 595 F.3d 458, 465 (2d Cir. 2010) (citation omitted); *In re McMahon*, 235 B.R. 527, 537-38 (S.D.N.Y. 1998) (finding summary judgment appropriate where the meaning of the contract was unambiguous in dispute concerning a contract governed by English law). Furthermore, "[t]he matter of whether the contract is ambiguous is a question of law for the court." *Law Debenture Trust*, 595 F.3d at 465. "Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation." *Id*. at 467 (citation and internal quotation marks omitted). "Thus, the court should not find the contract ambiguous where the interpretation

urged by one party would strain the contract language beyond its reasonable and ordinary meaning." *Id*.

## II. THE APA LIMITS IDENTEX AND FIRSTLOGIC TO ANNUAL, PER SERVER SUBLICENSES

Here, there is no question that the APA's language is unambiguous with regard to the ability of Identex and Firstlogic to issue sublicenses:  it only allows annual, single-server sublicenses.  Because the MLA states that it gives American Express a perpetual license unlimited as to the number of servers, the MLA purports to grant American Express rights that go beyond those granted to Firstlogic under the APA.  As a result, the MLA cannot serve as a defense to Micro Focus' infringement claim.

### A. Principles of Contract Interpretation under English Law

Interpreting the APA requires an analysis under the law of the United Kingdom. Drennan Decl. Ex. A, T&C ¶ 6.7.1.  Under English law, a contract is interpreted according to its plain and ordinary meaning based on "what a reasonable person having all the background knowledge which would have been available to the parties would have understood them to be using the language in the contract to mean." *Arnold v. Britton* [2015] UKSC 36, [2015] AC 1619, [2015] 2 WLR 1593.  *See also* Jacob Decl. ¶¶ 17-33.  English courts interpret language in contracts considering "(i) the natural and ordinary meaning of the clause, (ii) any other relevant provisions of the lease, (iii) the overall purpose of the clause and the lease, (iv) the facts and circumstances known or assumed by the parties at the time that the document was executed, and (vi) commercial common sense, but (vi) disregarding subjective evidence of any party's intentions." *Arnold v. Britton* [2015] UKSC 36; Jacob Decl. ¶¶ 17-33 (summarizing the approach to contract interpretation under English law).

As noted in *Arnold* and prior cases, English law favors a construction that makes commercial common sense, taking into account all relevant provisions of the agreement and the overall purpose of the clause and the agreement. *See also McMahon*, 235 B.R. at 533 ("Both parties also agree that in determining the meaning of the language of a commercial contract, English law generally favors a commercially sensible construction.  A commercial construction is more likely to give effect to the intention of the parties than 'too nice a concentration on individual words.'" (quoting *I Chitty on Contracts*, ¶ 12-040 (27th ed. 1994).)); *Rainy Sky v. Kookmin Bank* [2011] UKSC 50 ("If there are two possible constructions, the court is entitled to prefer the construction which is consistent with business common sense and to reject the other.") (cited in Jacob Decl. ¶ 29, subp. 16, 21)).  As summarized by Sir Robin, "[t]he business sense of a proposed interpretation will be taken into account particularly where there are two possible meanings and one makes more business sense than the other."  Jacob Decl. ¶ 18(f).

In addition, the court must take into consideration the background knowledge reasonably available to the parties at the time of contracting.  Jacob Decl. ¶ 18(e).  In this case, that background includes the fact that there were pre-existing customers with perpetual licenses and that the parties were moving from a perpetual license scheme to an annual, per-server license scheme.

Finally, under English law, as under American law, the agreement must be construed as a whole.  Jacob Decl. ¶¶ 27(b) ("English law does not interpret documents acontextually. Words are not given an acontextual meaning, but are interpreted in the context of the document as a whole."); 42(i) ("[A]contextual reading is anathema to English law principles of construction.").  This makes sense considering that the end goal of contract interpretation is to determine the intent of the parties.  *Arnold v. Britton* [2015] UKSC 36.  The best way to understand what the

parties intended is to look at the agreement in its entirety, not at individual clauses in isolation. *See* Jacob Decl. ¶¶ 27(b), ¶ 42(i). Notably, any given clause of a contract must be interpreted in light of "any other relevant provisions of the [contract and] . . . the overall purpose of the clause and the lease." *Arnold v. Britton* [2015] UKSC 36. Therefore, under English law, any given provision of an agreement must be interpreted in light of the surrounding provisions and the overall commercial purpose of the agreement.

### B. The APA Permits Only Annual Term, Per Server Licenses

Applying the foregoing principles of English law to the question of the scope of the APA, it is unambiguous that the APA does not permit perpetual, unlimited-server licenses of the kind American Express purports to have obtained in the MLA. Read together, the APA (Drennan Decl. Ex. A), and specifically Paragraphs 2.1, 3.1, 3.1.5, 3.2 and 3.2.8 of its Terms and Conditions reveal no other interpretation. In Paragraph 2.1, Micro Focus grants to Identex a non-exclusive license to market and distribute the RTS in conjunction with the IACE Application. Drennan Decl. Ex. A at T&C ¶¶ 2.1. To the extent that the APA gives Identex the ability to issue sublicenses, Paragraph 3.1.5 explicitly provides that copies of the RTS distributed by Identex, or by extension Firstlogic, must be subject to an end user license agreement that "limits the license granted to a per [server] license . . . and to an annual term." *Id*. at T&C ¶¶ 3.1.5. This is confirmed in Paragraph 3.2.8, which makes clear that Identex "may not . . . . "[o]btain or provide a license for the RTS other than an annually renewable license term." *Id*. at T&C ¶ 3.2.8.

Following a review of English law, the APA and all relevant facts, Plaintiffs' expert witness Right Honourable Professor Sir Robin Jacob concludes unequivocally that it does not permit the granting of anything other than annual, per-server licenses. Jacob Decl. ¶¶ 17-33

(discussion of English law); 34-41 (analysis of APA); 42 (opinion).  Commercial business sense bolsters his conclusion, as "[t]he clear business purpose of the APA is to move from a system whereby [Identex] granted perpetual licenses under [Micro Focus's] copyright to one by which it granted annual licenses only."  *Id*. ¶ 42(a).  Moreover, "[a]nother clear business purpose is that for the future new users will have a per server license.  In effect their payments are proportionate to their usage – a running proportionate royalty."  *Id*. ¶ 42(b).  Sir Robin notes that the parties made sure to identify existing end users who, at the time of contracting, had perpetual licenses who could either retain them or elect to move into the new system.  *Id*. ¶ 42(d); Drennan Decl. Ex. A at Ex. 1, ¶ 2.  (American Express was not among such pre-existing perpetual licensees.  *Id*. at Appendix C; *see also* Weinberger Decl. Ex. E.)  No such provisions were made for *new* perpetual term licensees "precisely because [the parties] did not contemplate that there could be any or that [Identex] should have any power or authority to grant such licenses."  Jacob Decl. ¶ 42(d).

In short, the APA unequivocally prevents Identex and by extension Firstlogic from granting anything other than annual sublicenses.

### C. The Grant of Rights in the RTS to American Express in the MLA Is Invalid, Rendering it Liable for Copyright Infringement

"It is black-letter law that a claim for copyright infringement lies when a party's use of copyrighted material exceeds the scope of its license."  *Harrell v. Van der Plas*, 08-CV-8252 (GEL), 2009 WL 3756327, at *2 (S.D.N.Y. Nov. 9, 2009) (Lynch, J.) (citing *Rogers v. Koons*, 960 F.2d 301, 306 (2d Cir. 1992)).  Moreover, "a licensee has no right to . . . sub-license the rights acquired unless expressly authorized so to do by the licensor or by the terms of the licensing agreement."  *Ariel (UK) Ltd. v. Reuters Grp. PLC*, 05-CV-9646 (JFK), 2006 WL 3161467, at *6 (S.D.N.Y. Oct. 31, 2006), *aff'd,* 277 F. App'x 43 (2d Cir. 2008) (citing *Ward v.*

*Nat'l Geographic Soc'y*, 208 F. Supp. 2d 429, 441 (S.D.N.Y. 2002); *Gardner v. Nike, Inc.*, 279 F.3d 774, 778 (9th Cir. 2002); 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* ("*Nimmer*") § 10.01 (2006)).[4]

Accordingly, a purported sublicense that exceeds the scope of the rights granted to the licensor is void. *See Gilliam v. Am. Broad. Cos.*, 538 F.2d 14, 20 (2d Cir. 1976) (the "improper extension of the underlying work into media or time, *i.e.*, duration of the license" gives rise to an infringement claim notwithstanding a license) (citing *Bartsch v. Metro-Goldwyn-Mayer, Inc.*, 391 F.2d 150 (2d Cir 1968); *G. Ricordi & Co. v. Paramount Pictures Inc.*, 189 F.2d 469, 471 (2d Cir. 1951); *Rice v. Am. Program Bureau*, 446 F.2d 685, 689-90 (2d Cir. 1971), *abrogated on other grounds by Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010)). *See also Major League Baseball Promotion Corp. v. Colour-Tex, Inc.*, 729 F. Supp. 1035, 1042 (D.N.J. 1990) (finding that where sublicensor granted manufacturer the right to produce merchandise bearing plaintiff's intellectual property, but did so beyond the scope of the license it had been granted, the manufacturer was liable to the copyright owner for copyright infringement); *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 103 (9th Cir. 1960) (affirming district court's grant of injunction against defendant's theatrical display of plaintiff's copyrighted film because defendant had purchased film from entity that licensed the film for non-theatrical use only; while that entity may have purported to sell the print unconditionally, the defendant's commercial exhibition of the film was "not authorized by any power which [the plaintiff] placed in the hands of [that entity]").

---

[4] The cited decisions are under the 1909 Copyright Act, but "[t]he limitations on a licensee's right to . . . sublicense under the 1909 Act would appear to continue under the current Act with respect to non-exclusive licenses . . . ." 3 *Nimmer* § 10.02[B][4][a] (2014). As noted above, the APA's grant to Identex and Firstlogic is nonexclusive. Drennan Decl. Ex. A. T&C ¶ 2.1.

{F2117289.3 }                                11

Based on this law, if the right to sublicense granted to Identex and Firstlogic under the APA is limited to annual term and per server sublicenses, then the MLA cannot serve as a defense to Micro Focus's infringement claim against American Express.  As a result, this motion turns on the proper interpretation of the APA.  *See, e.g.*, *Leutwyler v. Royal Hashemite Ct. of Jordan*, 184 F. Supp. 2d 303, 306 (S.D.N.Y. 2001) ("The question thus reduces to an interpretation of the license that Leutwyler concedes was granted.")

As demonstrated above, the only sublicensing right provided in the APA is unambiguously limited to annual term, per-server sublicenses.  As a result. Firstlogic exceeded the scope of the authority granted to it and Identex when it purported to convey a perpetual, unlimited-server license to American Express in the MLA.  *See, e.g.*, *Gilliam*, 538 F.2d at 20-21 (collecting cases); *Major League Baseball Promotion*, 729 F. Supp. at 1042; *Hampton*, 279 F.2d at 103.  Indeed, *all* references in the APA to Identex's right to grant downstream sublicenses are qualified by the limitations as to time (annual) and number of servers (single); any broader reading of the right to sublicense violates the express authorization requirement set forth in *Ariel (UK) Ltd.*, 2006 WL 3161467, at *6, *aff'd,* 277 F. App'x 43.  Accordingly American Express has no valid license to use the RTS and no defense to Micro Focus's infringement claim on that basis.

## CONCLUSION

For the reasons stated above, the APA only permits the issuance of annual, single-server sublicenses of the RTS.  As a result, Identex and Firstlogic simply had no right to issue perpetual, unlimited-server licenses like the MLA.  Therefore, American Express lacks a valid license for use of Plaintiffs' RTS, and Plaintiffs respectfully request that partial summary judgment be entered in their favor.

Dated: December 16, 2016
       New York, NY

Respectfully submitted,

FROSS ZELNICK LEHRMAN & ZISSU, P.C.

By: _____
   James D. Weinberger (jweinberger@fzlz.com)
866 United Nations Plaza
New York, New York 10017
Tel: (212) 813-5900
Fax: (212) 813-5901

Stuart M.G. Seraina (sseraina@kg-law.com)
  (admitted *pro hac vice*)
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202
Tel: (410) 752-6030
Fax: (410) 539-1269

*Attorneys for Plaintiffs/Counterclaim-Defendants*